## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY SCOCOZZO,<br>　　　　　Plaintiff | : | No. 3:24cv1748 |
| | : | |
| | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| DAVID W. SUNDAY, JR., Attorney<br>General of the Commonwealth<br>of Pennsylvania, *et al.*<br>　　　　　Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court are objections to five (5) Reports and Recommendations ("R&Rs") filed by Plaintiff Anthony Scocozzo.  Scocozzo is a pretrial detainee at the Baker County Detention Center in Macclenny, Florida.  He also faces criminal charges in Lackawanna County, Pennsylvania after allegedly making a false written statement on a Bureau of Alcohol, Tobacco, and Firearms ("ATF") form relative to his mental health.  He seeks relief from a firearm prohibition which led to the charges.  He pursues claims for damages against those involved in his commitments to a treatment facility under Section 302 of Pennsylvania's Mental Health Procedures Act ("MHPA"), 50 PA. STAT. § 7302.  He also claims that Section 301 of the MHPA is unconstitutionally vague.

Three of the R&Rs concern motions to dismiss filed by various state and municipal defendants.  A fourth R&R addresses deficiencies in the second

amended complaint with respect to mental health providers.  The fifth R&R concerns Scocozzo's motion for partial summary judgment.

United States Magistrate Judge Martin C. Carlson issued each R&R.  He recommends that the defendants' motions to dismiss be granted.  After separately screening the complaint under 28 U.S.C. § 1915(e)(2)(B), the magistrate judge also recommends dismissal of the claims against the mental health providers.  Lastly, he recommends that the plaintiff's motion for summary judgment be denied as premature.

Scocozzo responded by filing overlapping objections to the R&Rs with briefs in support.  For the reasons set forth below, the objections will be overruled, the R&Rs will be adopted, the motions to dismiss will be granted, claims will be dismissed under Section 1915(e)(2)(B)(ii), the motion for summary judgment will be denied, and the remaining dispositive motions will be referred to Magistrate Judge Carlson for additional R&Rs.

## Background

Scocozzo's *pro se* second amended complaint asserts claims pursuant to 18 U.S.C. § 925A and 42 U.S.C. § 1983.[1]  In 2009, two different police officers from two different police departments initiated proceedings under Section 302 of

---

[1] The court has jurisdiction over Scocozzo's claims under 28 U.S.C. § 1331.

2

the MHPA. Section 302 authorizes an involuntary emergency psychiatric evaluation and inpatient treatment for up to 120 hours. 50 PA. STAT. § 7302(d).

Notwithstanding these two instances of involuntary mental health treatment, Scocozzo tried to buy a firearm in 2020. The purchase was denied after a background check. The plaintiff faces criminal charges in the Commonwealth related to his answers on an ATF form. Six years later, Scocozzo's legal troubles over the attempted firearm purchase have not resolved. In the interim, authorities charged plaintiff with other criminal offenses in the State of Florida and he is awaiting trial there.

With this specific civil action, Scocozzo seeks to have Section 301 of the MHPA declared unconstitutionally vague and remove inclusion of his Section 302 commitments from the National Instant Criminal Background Check System ("NICS") and the Pennsylvania Instant Checks System ("PICS") He proceeds under a federal statute which allows individuals to bring an action against the United States and the individual states to correct "erroneous information."[2] 18 U.S.C. § 925A. Additionally, Scocozzo asserts Section 1983 claims against

---

[2] Relative to the request for a declaratory judgment, Scocozzo's amended complaint names various defendants in their individual and official capacities, which are, after Rule 25(c) substitutions: 1) the United States Attorney General, Todd Blanche (acting); 2) the Director of the Federal Bureau of Investigations, Kash Patel; 3) the Director of the Bureau of Alcohol, Tobacco, and Firearms, Robert Cekada; 4) the Attorney General of the Commonwealth of Pennsylvania, David W. Sunday, Jr.; and 5) the Commissioner of the Pennsylvania State Police, Lieutenant Colonel George L. Bivens (acting).

3

police officers who investigated his attempt to purchase a firearm in 2020 and filed criminal charges against him. [3]  And finally, Scocozzo also advances civil rights claims against the police officers, medical providers, and a mental health administrator who were involved in the two involuntary commitments more than 15 years ago. [4]

Scocozzo's 42-page second amended complaint is the operative pleading in this matter. (Doc. 98).  To support the above claims, Scocozzo alleges that, on or about March 11, 2020, he attempted to purchase a firearm at a Pennsylvania firearms dealer. Id. ¶ 1.  Per the plaintiff, his application was denied without an explanation. Id.

According to the allegations, on March 12, 2020, Scocozzo questioned Defendant Francis McLane, a detective from the Scranton Police Department about the denial.  Id. ¶ 2.  McLane allegedly told the plaintiff that he would be

---

[3] Scocozzo brings Section 1983 claims against: Francis McLane, Todd Spinosi, and Tim Mayo individually and in their official roles as officers of the Scranton Police Department . Bryan Paulshock, a Pennsylvania State Trooper, is also named as a defendant in an individual and official capacity with respect to those claims.

[4] Relative to these claims, the defendants named in this lawsuit include individuals related to the March 2009 commitment are: 1) the Borough of Moscow Police Department; 2) Michael Mallick, a Moscow Borough police officer; and 3) Dr. Boriosi, the physician who signed the certification of necessity.  Plaintiff has also filed suit against individuals relative to a November 2009 commitment: 1) McLane, a City of Scranton police officer; and 2) Muhammad Rahman, MD, the physician who signed the certification of necessity on that occasion.  Also named as a defendant is Stephen Arnone, an administrator who endorsed the involuntary commitments in both March and November 2009.

4

charged with crimes if he filed an appeal and the appeal was not decided in his favor. Id.

Scocozzo filed the appeal. Id. ¶ 4. He received a response stating that he was denied a firearm due to prior involuntary mental health commitments in March and November 2009. Id. According to the plaintiff, he has no recollection of ever being involuntarily committed. Id. ¶ 5. Rather, he alleges: "During my stay at the hospital, I was in general population of the psych unit. I was never secluded or restrained. I also never received medication via injection." Id. ¶ 13. Simultaneously, he asserts claims against police officers, discussed in more detail below, alleging that he was seized without consent and forced to take mind-altering medications. Id. at ECF p. 20.[5] He also believes the "treatment needed" on his 302-related documents were only recommendations. Id. ¶ 13.

Based on answers provided in a firearm transaction record form, and after a state and local police investigation, Scocozzo was charged in the Lackawanna County Court of Common Pleas with two counts of violating the Pennsylvania Crimes Code, 18 PA. CONS. STAT. § 4904(b), related to a written false statement on the background check form.[6] Id. ¶¶ 6–7. According to the plaintiff, an

---

[5] Scocozzo's handwritten second amended complaint switches from numbered paragraphs to unnumbered paragraphs in the section where he asserts claims against the various defendants.

[6] Scocozzo attaches the affidavit of probable cause supporting the police criminal complaint. In the affidavit, Detectives Todd Spinosi and Tim Mayo of the Scranton Police Department

assistant district attorney "threatened to increase the charges to felonies if [he] pled not guilty and motioned to represent [himself]." Id. ¶ 8. Plaintiff continued to represent himself. Id. ¶ 9. He alleges that authorities then filed a felony count against him for making a materially false written statement when purchasing a firearm in violation of 18 PA. CONS. STAT. § 6111(g)(4). Id.

Scocozzo was released on his own recognizance pending trial on the Pennsylvania charges. Id.

He then moved to Florida. Id. ¶ 10.

There, he added a second layer of criminal charges. He alleges:

> Possibly irrelevant to this matter, but through the course of trying to make friends in my new Florida community, I was charged with aggravated stalking, written threats, and resisting arrest without violence due to commenting on my neighbor's friend's public Instagram account which they did not want me messaging them or making comments about.

Id. ¶ 11.

For the last several years, Scocozzo has been held at the Baker County Detention Center in Northern Florida as he awaits trial on those charges. He

---

indicate that Scocozzo answered "No" to question 11(f) on ATF Form 4473, which asks: "Have you ever been adjudicated mentally defective (which includes a determination by a court, board, commission, or other lawful authority that you are a danger to yourself or to others or are incompetent to manage your own affairs) or have you ever been committed to a mental institution?" (Doc. 98-2, Pl. Exs. at ECF p. 4).

alleges that his Lackawanna County charges impede his ability to challenge the legality of his pretrial detention in Florida.

In response to Scocozzo's efforts to unwind his prohibited status and obtain money damages through the second amended complaint, three sets of defendants filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Amid these motions, plaintiff filed a motion for partial summary judgment.

This *pro se* matter was referred to a United States Magistrate Judge for pretrial management and the issuance of R&Rs on case dispositive motions. Thereafter, Magistrate Judge Carlson issued R&Rs with respect to the above dispositive motions, each drawing objections from the plaintiff due to the nature of the recommendations. The magistrate judge also screened the second amended complaint under 28 U.S.C. § 1915(e)(2)(B) and determined that Scocozzo failed to state a claim against the mental health providers and a mental health administrator involved in his 2009 involuntary commitments (who have also not been served in this matter). The screening recommendations also drew objections from the plaintiff. Given the number of objections, the court will conduct a full *de novo* review of the matters contemplated by the R&Rs. The undersigned will also review the allegations in plaintiff's second amended complaint, as required by law.

7

**Standard of Review**

## 1. Objections to Reports and Recommendations

In disposing of objections to a magistrate judge's R&R, the district court must make a *de novo* determination of those portions of the report against which objections are made. 28 U.S.C. § 636(b)(1)(C); Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983). "[T]he court may accept, reject, or modify, in whole or in part the findings or recommendations made by the magistrate judge." Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987) (citing 28 U.S.C. § 636(b)(1)(C)). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

## a. Rule 12(b)(6) Motions to Dismiss and 28 U.S.C. § 1915(e)(2)(B)(ii)

Three of the R&Rs concern motions to dismiss Scocozzo's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss for failure to state a claim, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)). This means that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief which is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual

8

content is pled which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. Oldham v. Pennsylvania State Univ., 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted). The second step involves reviewing the operative pleading and disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual. See Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted). The third step evaluates the plausibility of the remaining allegations. Id. In evaluating plausibility of the plaintiff's allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. Id. (citations omitted). In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon

these documents.  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

Scocozzo has attached various documents as exhibits to the second amended

complaint, which may be considered. (Doc. 98-1).  The dockets in Scocozzo's

criminal cases are matters of public record and are publicly available on the

internet through the Administrative Office of Pennsylvania Courts website and

through the Baker County, Florida Clerk of Court's office.

One of the R&Rs reviews plaintiff's allegations under 28 U.S.C. §

1915(e)(2)(B).  Section 1915(e)(2)(B) is part of a federal statute governing *in*

*forma pauperis* ("IFP") proceedings.  It mandates that federal courts dismiss any

lawsuit filed by an IFP plaintiff if the court determines that the action is frivolous

or malicious, fails to state a claim, or seeks relief against an immune defendant.

The standard for dismissal of a complaint for failure to state a claim under

Section 1915(e)(2)(B)(ii) is the same standard for dismissal for failure to state a

claim under Rule 12(b)(6). Herrera v. Agents of Pennsylvania Bd. of Prob. &

Parole, 132 F.4th 248, 254 n.5 (3d Cir. 2025) (citation omitted).

As discussed below, the court reaches matters not addressed in the

moving parties' motions to dismiss or in the R&Rs, either because the moving

party asserted other grounds for dismissal or such grounds were not considered

by the magistrate judge.  The IFP statute expressly provides that "the court **shall**

dismiss the case **at any time** if the court determines that…the action…fails to

10

state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added).  This statute thus creates an ongoing obligation for the court to review the plaintiff's pleadings and an independent, mandatory basis for dismissing the plaintiff's claims if appropriate.  To the extent the court strays from the arguments raised in the parties' motions to dismiss or the analyses from each of the R&Rs, it is doing so pursuant to Section 1915(e)(2).

Additionally, mindful that this is Scocozzo's second amended complaint and that he asserts claims for violation of his civil rights, the court also considers, in conjuction with any Rule 12(b)(6) or Section 1915(e)(2)(B)(ii) analysis, whether the plaintiff should be afforded leave to amend.  "[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).

**Analysis**

### 1. Defendants Mallick and Borough of Moscow Police Department's Motion to Dismiss (Doc. 102)

As discussed above, Scocozzo asserts Section 1983 false arrest and due process claims against Defendants Michael Mallick and possibly the Moscow Police Department as the result of an involuntary commitment in March 2009 under Section 302 of the MHPA.  The defendants' motion to dismiss argues that

11

these claims are time-barred and otherwise fail on their merits. (Doc. 103, Br. in Supp.)  Magistrate Judge Carlson recommends that the motion to dismiss be granted. (Doc. 157).  Scocozzo objects on several overlapping grounds. (Doc. 172).  His objections are without merit.

### a.  Defendant Mallick Will Be Dismissed

Defendant Mallick is the municipal police officer who committed the plaintiff under Section 302 of the MHPA in March 2009.  Plaintiff alleges that Mallick initiated the 302 commitment "without due process, probable cause, or sufficient reason[.]" (Doc. 98, Sec. Am. Compl. at ECF p. 20).  Plaintiff also includes Mallick's application for involuntary emergency examination and treatment as an exhibit to the operative pleading. (Doc. 98-1 at ECF pp. 29–35).

Upon consideration of Defendant Mallick's arguments in his motion to dismiss, the R&R recommends dismissal of these claims under Rule 12(b)(6) as time-barred and additionally for failure to state any viable Section 1983 claims.

Scocozzo filed suit on October 15, 2024 related to the March 2009 mental health commitment. (Doc. 1).  Although the statute of limitations is an affirmative defense, apparent timeliness issues may be considered at this posture. See Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (citing Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir.1978); Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).  By the calendar, more than

fifteen years passed between Mallick's commitment of the plaintiff and this lawsuit. That raises an apparent timeliness issue on the face of the plaintiff's second amended complaint.

The R&R notes Scocozzo's efforts to get around any timeliness issues by asserting that he was not specifically aware of his involuntary commitment at the time of the events in March 2009. (Doc. 157 at 13). Nonetheless, the R&R also concludes that the plaintiff's own allegations establish that he knew of this involuntary commitment no later than March 2020 but did not file this lawsuit until October 2024. Id. Accordingly, the R&R recommends dismissal of the claims against Mallick.

Scocozzo responded to the R&R with a multitude of objections. Among the objections is a complaint that the magistrate judge did not permit sur-reply briefing so that plaintiff could argue that "equitable tolling applies in addition to the discovery doctrine." (Doc. 172 at 2).

Upon review, the court reaches the same conclusions as the R&R for the same and additional reasons. Scocozzo's second amended complaint alleges that he "had no recollection of ever being involuntarily committed." (Doc. 98, ¶ 5). At the same time, he alleges that he was seized without consent for a mental evaluation and forced to take mind-altering medication. (Id., unnumbered paragraph at ECF p. 20). Due to the nature of the allegations, both cannot be

13

true for consideration of the statute of limitations. Sur-reply briefing is a matter of the court's discretion and would have served no substantive purpose in this case.

The law is well-settled with respect to the claims against Defendant Mallick for the March 2009 events:

> The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose. Wallace v. Kato, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). The statute of limitations for a § 1983 claim arising in Pennsylvania is two years. 42 PA. CONS. STAT. § 5524(2); see also Kost v. Kozakiewicz, 1 F.3d 176, 189–90 (3d Cir.1993). Federal law governs a cause of action's accrual date. Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991). Under federal law, a cause of action accrues, and the statute of limitations begins to run, "when the plaintiff knew or should have known of the injury upon which its action is based." Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998) (citation omitted); see also Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known. Barren v. United States, 839 F.2d 987, 990 (3d Cir. 1988). As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury. See United States v. Kubrick, 444 U.S. 111, 120, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). "The cause of action accrues even though the full extent of the injury is not then known or predictable. Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." Wallace, 549 U.S. at 391, 127 S.Ct. 1091 (internal quotation marks and citations omitted).

14

Kach v. Hose, 589 F.3d 626, 634–35 (3d Cir. 2009).

After review of allegations that the plaintiff was seized without consent for a mental evaluation and forced to take mind-altering medications, the claims for false arrest and for due process violations accrued when the defendant involuntarily committed the plaintiff on March 10, 2009, the date that the plaintiff allegedly sustained an arrest without legal process. See Wallace, 549 U.S. at 388. The claims did not accrue later, when the plaintiff became subjectively aware of any gun-buying restrictions as the result of the commitment.

In objecting to the R&R, Scocozzo seems to jumble the nature of his injuries, equitable tolling, and the discovery rule. Although accrual is a matter of federal law, state law tolling principles govern Section 1983 with exceptions that are not relevant here. See Kach, 589 F.3d at 639. Pennsylvania law considers the discovery rule under the umbrella concept of equitable tolling. Gunn v. Cornell Abraxas Grp., LLC, 751 F. Supp. 3d 530, 538 (W.D. Pa. 2024) (citing Riad v. Wells Fargo Bank, No. 22-1757, 2023 WL 8676234, *3 (3d Cir. Mar. 23, 2023 and Rice v. Diocese of Altoona-Johnstown, 255 A.3d 237, 248 n.3 (Pa. 2021)). In Pennsylvania, the discovery rule applies when critical information about an injury eludes detection through no lack of diligence on the plaintiff's part. Reibenstein v. Barax, 286 A.3d 222, 234 (Pa. 2022).

15

Plaintiff argues for the application of the discovery rule because, as he alleges, he did not discover the full implications of the involuntary commitments until just before he filed suit. His brief in support of the objections lays out a timeline where he: 1) was verbally denied a gun purchase in March 2020; 2) learned the denial was due to prior involuntary commitment in April or May 2020; and 3) then did not learn the actual dates of his commitments until December 2023 when he obtained the 302 applications in discovery during his Florida criminal case. (Doc. 172-1, Pl. Br. in Supp. of Obj. at 8–9).

This timeline ignores the allegations where the plaintiff sets forth that he was taken to a hospital by Defendant Mallick for involuntary mental health treatment in 2009. Any constitutional injury would be apparent to a reasonable person on the date these events occurred, not more than a decade later. This timeline even ignores a key point in September 2020, where Scranton Police Detectives charged the plaintiff relative to statements he made in the background check process earlier that year and the plaintiff proceeded in that case *pro se*. (Doc. 98, Sec. Am. Compl. ¶¶ 7–9; Doc. 98-1, Pl. Ex., Police Crim. Compl. at ECF pp. 1–4). The magistrate judge did not err when he stated: "On these facts, by March 2020, Scocozzo plainly had sufficient knowledge of his injury and its cause[.]" (Doc. 157 at 13).

After the court's own review of this matter, the statute of limitations had run on plaintiff's Section 1983 claims against Mallick in March 2011. Despite plaintiff's arguments, the facts set forth in the second amended complaint cannot toll the statute. The claims against Defendant Mallick are time-barred. Based on the allegations in this case, leave to amend would not cure any timeliness issue.

Magistrate Judge Carlson also recommends dismissal of the claims against Mallick on their merits. Scocozzo, through his myriad of objections, believes he can prevail on hypertechnical arguments. As discussed next, the R&R reaches the correct conclusion.

Scocozzo's second amended complaint asserts Section 1983 claims against Mallick for "due process or false arrest." (Doc. 98 at 20). These claims implicate the Fourth and Fourteenth Amendments to the United States Constitution. With respect to the Fourteenth Amendment, "a state, in conformity with the Due Process Clause, may confine mentally ill individuals if it shows by clear and convincing evidence that the individuals are ill and dangerous to themselves or others." Doby v. DeCrescenzo, 171 F.3d 858, 870 (3d Cir. 1999) (citing Foucha v. Louisiana, 504 U.S. 71, 80, (1992) (emphasis removed)). Section 302 of the MHPA was created to allow for emergency situations and it "may be reasonable, therefore, for a state to omit a provision for notice and a hearing in a statute created to deal with emergencies, particularly where the

17

deprivation at issue, in this case detention for a maximum of several hours to permit an examination, continues for only a short period of time." Id.

Scocozzo's second amended complaint does not delineate whether he is asserting a substantive or a procedural due process claim. As previously observed by the Third Circuit, the MHPA authorizes seizures that are reasonable under the Fourth Amendment, which establishes that it meets the rationality test imposed by a substantive due process analysis. Id. at 871 n.4. Additionally, under the more-specific amendment rule, the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than any due process analysis. See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010); Berg v. Cnty. of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000). Therefore, the court, like the R&R, only considers Scocozzo's Fourth Amendment claim.

An involuntary commitment under Section 302 of the MHPA is a civil, not criminal proceeding. The Fourth Amendment applies to both, so the court will construe plaintiff's claim as one for unlawful seizure. See Doby, 171 F.3d at 871. The Fourth Amendment protects people from unreasonable searches and seizures. Its touchstone is reasonableness. Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006). Under the law, "the temporary involuntary commitment of those deemed dangerous to themselves or others qualifies as a 'special need' permitting the state to act without a warrant." Doby, 171 F.3d at 871.

18

"[I]t is not unreasonable to temporarily detain an individual who is dangerous to [himself] or others." Cole v. Town of Morristown, 627 F. App'x 102, 106 (3d Cir. 2015). Although non-precedential, Cole considered whether the police and mental health screeners had probable cause to believe that the person was dangerous and whether they reasonably took that individual for a mental health evaluation. Id. (applying Monday v. Oullette, 118 F.3d 1099, 1102 (6th Cir.1997) ("The Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others.")). The court will thus review Scocozzo's allegations for a lack of probable cause.

"The probable cause inquiry is 'commonsense,' 'practical,' and 'nontechnical' and it is based on the totality of the circumstances and is judged by the standard of 'reasonable and prudent men.' " United States v. Donahue, 764 F.3d 293, 300 (3d Cir. 2014) (quoting Illinois v. Gates, 462 U.S. 213, 230-31 (1983)). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995). The existence of probable cause is generally a factual issue in a Section 1983 action. Groman v. Twp. of Manalapan, 47 F.3d 628, 635 (3d Cir.

19

1995). But a court "may conclude in the appropriate case, however, that probable cause did exist as a matter of law if the evidence, viewed most favorably to [the plaintiff], reasonably would not support a contrary factual finding." Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997) (footnote omitted).

In the operative second amended complaint, Scocozzo alleges that Mallick had an insufficient reason to initiate the involuntary commitment process and withheld a basis for checking certain boxes on the commitment form relative to risk of harm and reasonable probability of suicide. (Doc. 98, Am. Compl. at ECF p. 20). Yet, at the same time, he has supplied a form completed by Mallick demonstrating that commitment was supported.

Specifically, the application form quotes the plaintiff directly. Per Mallick's application, the plaintiff expressed a desire to kill himself by deliberately overdosing on prescription medication. (Doc. 98-1, Pl. Exhs. at ECF p. 31). According to the commitment form, the plaintiff stated, "I am going to take 50 [Ambien] and 90 [Xanax] and kill myself. I can't take this anymore. I am going to kill myself." Id. Plaintiff made such comments in response to a traffic stop. Id.

Thus, even when this application form is viewed in a light most favorable to plaintiff, among his allegations that he does not recollect the involuntary commitments, Defendant Mallick had probable cause to seize the plaintiff on an

20

emergency basis, without a formal warrant, because the plaintiff made specific threats to commit suicide by prescription medication in response to a police encounter.

Scocozzo's objections are wordy, but those words do not persuade. For example, he argues that Section 302 of the MHPA authorizes "involuntary examinations, not commitments." To the extent that plaintiff's arguments are even relevant to a Fourth Amendment claim, those arguments get too fixated on verbiage.

The MHPA authorizes involuntary emergency examinations and treatment "[w]henever a person is severely mentally disabled and in need of treatment[.]" 50 PA. STAT. § 7301(a). "A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself[.]" Id. "Clear and present danger to himself shall be shown by establishing that within the past 30 days… the person has made threats to commit suicide and has committed acts which are in furtherance of the threat to commit suicide." 50 PA. STAT. § 7301(b)(2)(ii).

Emergency examinations may be undertaken at a treatment facility without a warrant by an "authorized person who has personally observed conduct

21

showing the need for such examination," 50 PA. STAT. § 7302(a), that is, "personal observation of the conduct of a person constituting reasonable grounds to believe that he is severely mentally disabled and in need of immediate treatment[,]" 50 PA. STAT. § 7302(a)(2). Authorized persons include a "peace officer." Id. Persons subject to Section 302 are taken to a facility for examination by a physician to determine whether they are "severely mentally disabled…and in need of immediate treatment. 50 PA. STAT. § 7302(b). By statute, treatment is to begin immediately upon such a finding, id., and the statue authorizes up to 120 hours of treatment. 50 PA. STAT. § 7302(d).

The statute might not refer to these provisions as an "involuntary commitment," but it affords a process for the state to provide inpatient emergency mental health treatment to nonconsenting individuals (or those unable to legally consent) for up to five days. Dozens of Pennsylvania cases refer to a Section 302 commitment as an involuntary commitment because it is one. See e.g., Leight v. Univ. of Pittsburgh Physicians, 243 A.3d 126, 140 (Pa. 2020); In re R.D., 739 A.2d 548, 551 (1999).

The above review of the relevant MHPA provisions also discredits Scocozzo's objections that the probable cause analysis should be more nuanced or that that Mallick's application should have been supported with more information or different information or that Mallick should have considered

22

whether the plaintiff was "expressing frustration over a perceived harassing and illegal traffic stop." (Doc. 172-1, Pl. Br. in Supp. of Objs. at 7). Probable cause need not be supported by the granular detail that the plaintiff would require if he set the standard. Rather, based on the exhibits to Scocozzo's amended complaint, Defendant Mallick provided an explanation in support of an involuntary commitment that would support the requisite reasonable person standard. In response to a traffic stop, plaintiff stated he wanted to kill himself and described how he would do it.

Accordingly, Scocozzo's objections to this R&R will be overruled and the motion to dismiss will be granted. The claims against Defendant Mallick will be dismissed with prejudice.

### b. The Moscow Police Department Will Be Dismissed

The R&R also recommends dismissal of the Moscow Police Department as an improper Section 1983 defendant. (Doc. 157 at 9–10). Magistrate Judge Carlson's statement of the law is correct. The Moscow Police Department is merely an administrative arm of the local municipality and is not a separate judicial entity. See Padilla v. Twp. of Cherry Hill, 110 F. App'x 272, 278 (3d Cir. 2004) (citing DeBellis v. Kulp, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001)). Alternatively, the court may treat the police department and the municipality as a

23

single entity for the purposes of Section 1983 liability. Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997).

Even if the court construes the *pro se* plaintiff's allegations to encompass claims against the Borough of Moscow, Pennsylvania and not the Moscow Police Department, the second amended complaint fails to state a claim. Plaintiff has failed to identify a municipal policy or custom behind the alleged constitutional violations. This is insufficient to state a municipal liability claim. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).

As for Scocozzo's position, he "objects to dismissal of the Moscow Police Department as a defendant in this case because plaintiff [] never named [the department] as a defendant, nor is the department listed as a defendant in the court file." (Doc. 172-1 Pl. Br. in Supp. of Objs. at 3). Thus, he asserts "dismissal of the Moscow Police Department as a defendant is un-needed." Id. At the same time, he also references the Monell standard for municipal liability claims and argues that discovery is necessary to determine whether the department had an unconstitutional policy or custom. Id. Winning arguments are never this contradictory. Therefore, to the extent that Moscow Police Department is a defendant in this case, it will be dismissed with prejudice, as any amendment would not cure plaintiff's failure to plead timely, meritorious claims for violation of his constitutional rights.

24

## 2. Defendants McLane, Spinosi, and Mayo's Motion to Dismiss (Doc. 108)

Scocozzo also filed suit against three City of Scranton police officers, Defendants Francis McLane, Todd Spinosi, and Tim Mayo. Those officers also filed a motion to dismiss the second amended complaint with prejudice. (Doc. 108). The R&R recommends that the court dismiss some claims and abstain from hearing others. (Doc. 166).

The claims against McLane, Spinosi, and Mayo each differ and the allegations vary. The court begins with the allegations against Defendant McLane. Per the exhibits to plaintiff's second amended complaint, this defendant filed an application for involuntary commitment after encountering the plaintiff in November 2009. (Doc. 98-1, Pl. Exs. at ECF p. 36–41). Per McLane's application, Scocozzo allegedly told the officer that he wished to kill himself "more than 5 times." Id. at ECF p. 38. Plaintiff also allegedly told McLane that he "wished to jump off the Nay Aug Park treehouse into the gorge" if he was released from the psychiatric ward of a nearby hospital. According to the application, the plaintiff told McLane that he had been committed multiple times in the past. Id.

Plaintiff also alleges that he crossed paths with McLane more than a decade later under different circumstances after the plaintiff's failed purchase of a firearm at a city gun shop in 2020. The second amended complaint alleges

25

that McLane told Scocozzo that he would prosecute the plaintiff if the plaintiff filed an administrative appeal of the firearm purchase denial. (Doc. 98 ¶ 2). McLane also allegedly contacted Defendant Bryan Paulshock, a member of the Pennsylvania State Police, "and conspired to immediately close plaintiff's PICS challenge without giving plaintiff an [opportunity] or a heads up to investigate and submit documents in an appeal." Id. at ECF p. 27.  Per the plaintiff, McLane also "indirectly caused" him to be seized in Florida "due to [the] false charges." Id. at ECF p. 30.

As for Defendants Spinosi and Mayo, the plaintiff's second amended complaint attaches their police criminal complaint, which was used to pursue criminal charges for the alleged false statements on the ATF form.  (Doc. 98-1 at ECF p. 1-4).  Plaintiff asserts that Spinosi and Mayo had no basis to charge him with the pending offenses and lacked jurisdiction to press charges.

Based on these allegations, the second amended complaint includes at least six Section 1983 claims. Claim 4 asserts that McLane is liable for false arrest for the 2009 involuntary commitment.  Claim 6 alleges that McLane is liable for First Amendment interference.  Claim 7 advances that McLane, Spinosi, and Mayo (and Paulshock) conspired to commit First Amendment retaliation.  Claim 8 is a claim for First Amendment retaliation against these same police defendants.  Claim 9 asserts that McLane, Spinosi, and Mayo are liable for false

26

arrest due to the plaintiff's pretrial detention in Florida for unrelated charges. Finally, Claim 10 asserts that Spinosi and Mayo are liable for malicious prosecution.

McLane, Spinosi, and Mayo filed a motion to dismiss. (Doc. 108). The R&R recommends that this motion also be granted. (Doc. 166). Scocozzo objected to the R&R. (Doc. 175). The court will address each claim, disposing of the plaintiff's objections along the way. The court will also review plaintiff's allegations against these defendants under Section 1915(e)(2)(B).

Claim 4 asserts false arrest and due process claims against Defendant McLane for the November 2009 involuntary commitment. Like the claims against Defendant Mallick from the Moscow Police Department, the R&R recommends that the false arrest claim be dismissed as time-barred and for failure to state a claim.

The R&R and Scocozzo's objections cover much of the same ground discussed above with respect to Defendant Mallick. The court will not retrace those steps. For the substantially the same reasons set forth above, the false arrest and due process claims against McLane are time-barred. Based on the allegations and exhibits to the second amended complaint, those claims also lack merit. The second involuntary commitment application, from November 2009, demonstrates McLane's probable cause to seize the plaintiff on an emergency

basis for mental health treatment.  In context, the gorge at Nay Aug Park is a short walk from a psychiatric floor at a Scranton hospital, which the plaintiff allegedly referenced in his interaction with McLane.  Scocozzo allegedly told McLane that he would kill himself once released from that hospital's care and custody.  As with Officer Mallick, the plaintiff told Officer McLane that he was going to kill himself and expressed how he would do it.  In this instance, the plaintiff also allegedly implied that he would kill himself despite any efforts at treatment.  With such statements, McLane had probable cause to seize the plaintiff under the MHPA and seek involuntary examination and treatment.  Claim 4 will thus be dismissed with prejudice.

With respect to the remaining claims against these defendants, the R&R concludes that they are time-barred, lack merit, and seek to interfere in a state prosecution.  The court reaches substantially the same conclusions.

First, the false arrest allegations against McLane, Spinosi, and Mayo in Claim 9 fail to state a claim even when the proposed theory of recovery is deemed viable.  Specifically, Claim 9 is liberally construed as an effort to hold three Scranton police officers liable for plaintiff's arrest and extradition hold in Baker County, Florida beginning at some point after September 2020 on a date uncertain to the pleadings.[7]  Per plaintiff, these defendants "indirectly caused"

---

[7] Scocozzo confirms this theory of liability in his brief in opposition. (Doc. 133 at 15–17).

28

him to be seized by the Baker County Sheriff's Department "due to their false charges being a reason[.]" (Doc. 98, Sec. Am. Compl. at ECF p. 30). He argues "if it were not for Spinosi and Mayo's unjustified false statement charges, and the resulting extradition hold for those charges, [his] Florida lawyers would file a successful petition for writ of habeas corpus and [his] Florida pre-trial release would be reinstated." (Doc. 133, P. Br. in Opp. at 16).

To state a claim for false arrest under the Fourth Amendment, a plaintiff must allege that there was an arrest made without probable cause. James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995); Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988)). Although this particular false arrest claim seems attenuated and the court's research has not uncovered any in-circuit decisions with similar facts, the court will assume that a plaintiff can make indirect claims for false arrest and false imprisonment arising out of the extradition process. Assuming that such claims would be recognized, the plaintiff must allege that there was no probable cause for the extradition hold in the first place, i.e., no probable cause for the underlying out-of-state charges.

Based on the standard set forth above, plaintiff fails to allege a lack of probable cause for the Pennsylvania charges that formed the basis of part of the plaintiff's Florida arrest. According to the affidavit of probable cause supplied by plaintiff, Defendants Spinosi and Mayo supported the false information charges under 18 PA. CONS. STAT. § 4904(b) and § 6111(g)(4) with the following:

On 06/11/2020, Detectives Todd M Spinosi and Tim Mayo of the Scranton Police Department received a Request for Criminal Investigation #20-I-0032546 from PSP. The investigation concerned one ANTHONY J SCOCOZZO who had attempted to purchase a firearm from Roll Call LLC on 03/11/2020. At the time of the attempted purchase, SCOCOZZO completed the BATF Form 4473 and the Pennsylvania State Police Application/Record of Sale form. SCOCOZZO provided his PA Driver's License #████████, as identification. SCOCOZZO was checked through the PA PICs Instant Check and the purchase was denied. The reason for the denial was subsequently determined by PSP. On 03/10/2009 and 11/07/2009 SCOCOZZO was the subject of an Involuntary Mental Health Committal filed at the Community Medical Center in Scranton, Pa.

When completing the BATF Form 4473 at the time of the attempted purchase, SCOCOZZO checked "No" to Question 11(f) which asks "Have you ever been adjudicated mentally defective (which includes a determination by a court, board, commission or other lawful authority that you are a danger to yourself or to others or are incompetent to manage your own affairs) or have you ever been committed to a mental institution?".

SCOCOZZO challenged the Denial with PSP. The challenge was denied by PSP due to SCOCOZZO'S mental health record on 04/03/2020.

(Doc. 98-1, Pl. Exs. at ECF p. 4).

Upon review of the affidavit, the facts and circumstances within Spinosi and Mayo's knowledge were sufficient in themselves to warrant a reasonable person to believe that Scocozzo had made false statements about his mental health condition in an effort to purchase a gun from a city dealer. See Orsatti, 71 F.3d at 482. Scocozzo's issues with the extradition process are the result of moving to Florida from Pennsylvania where criminal charges were pending against him and then allegedly engaging in conduct which led to a second layer of charges in

Florida. Therefore, to the extent plaintiff's indirect claim for false arrest is even cognizable, that claim, Claim 9, will be dismissed with prejudice.

Claims 6, 7, and 8 assert First Amendment claims against McLane, Spinosi, and Mayo. The R&R does not address these claims directly, which triggered an objection from the plaintiff. (Doc. 175 at 3). Nonetheless, the R&R recommends dismissal of the claims against McLane, Spinosi, and Mayo, due to timeliness issues. (Doc. 166 at 9–10). That is, the First Amendment claims arise from events occurring in 2020. Upon review of the plaintiff's prior pleadings, these claims were not asserted in October 2024 when plaintiff filed his initial complaint. (Doc. 1). They were not asserted in February 2025 when Scocozzo filed an amended complaint. Rather, the First Amendment claims appeared for the first time when Scocozzo filed a proposed second amended complaint in May 2025 with a motion for leave to amend. (Doc. 72-1). He later added to those allegations in the version of the second amended complaint recognized by the magistrate judge in June 2025. (Doc. 98).

As for Defendant McLane, any Section 1983 First Amendment claim against that officer accrued on March 12, 2020 when the officer allegedly told the plaintiff he would press charges for making false statements if the plaintiff challenged the denial of the firearm purchase in an administrative appeal. This

31

claim was time-barred after March 12, 2022.  Claim 6 against McLane for First Amendment interference will be dismissed with prejudice.

Similarly, the First Amendment retaliation and conspiracy to retaliate claims accrued in September 2020 when criminal charges were filed against the plaintiff by Defendants Spinosi and Mayo.  This is so despite plaintiff's efforts to allege a continuing violation theory due to his Florida charges preventing the resolution of his Pennsylvania charges.  First Amendment retaliation claims are always individually actionable under the law, and a cause of action is supplied "by all but truly de minimis violations." O'Connor v. City of Newark, 440 F.3d 125, 127–28 (3d Cir. 2006) (citations omitted).  The filing of criminal charges was a discrete act.  The filing of criminal charges would also be the object of any alleged conspiracy to chill plaintiff's speech through retaliation.  Plaintiff had two years to make his retaliation and conspiracy claims from the moment he was criminally charged in Pennsylvania for making false statements on a firearm background check form.  He failed to do so.  Claims 7 and 8 will be dismissed with prejudice.

Claim 10 alleges that Spinosi and Mayo are liable for malicious prosecution.  To prove a malicious prosecution claim, a plaintiff must demonstrate, among other things, that the criminal case ended in his favor. Coello v. DiLeo, 43 F.4th 346, 354-55 (3d Cir. 2022).  The Pennsylvania criminal charges filed by those officers have not been resolved yet.  At a minimum,

32

plaintiff cannot establish this element of a malicious prosecution claim. Claim 10 will thus be dismissed without prejudice pending the outcome of the Pennsylvania prosecution. .

### 3. Screening of Plaintiff's Claims Against Defendants Rahman, Boriosi, and Arnone (Doc. 159)

The court turns to a similarly situated group of defendants who did not file a motion to dismiss. That is, Scocozzo's second amended complaint also asserts false arrest and due process claims against the mental health professionals who participated in his 2009 involuntary commitments, Dr. Muhammed Rahman and Dr. Boriosi. He also asserts similar claims against Stephen Arnone, a mental health administrator. In a separate R&R, Magistrate Judge Carlson concluded that the operative pleading failed to state a claim against these defendants upon screening the second amended complaint under 28 U.S.C. § 1915(e)(2)(B)(ii). (Doc. 159). He offers three grounds in the applicable R&R: the timeliness and merits issues discussed above, as well as Scocozzo's failure to make timely and proper service on these defendants.

As for the first two grounds, the court will not explore the same territory it did with the officers' motions to dismiss. With respect to the mental health defendants, Scocozzo complains of events that occurred approximately 15 years before he filed suit. Any claims for false arrest or for violation of due process accrued on the dates the involuntary commitments occurred. Scocozzo's failure

to pursue those claims until he was staring down criminal charges many years later does not toll any limitations period. Despite the defendant's objections, this is as true of the claims against Dr. Rahman, Dr. Boriosi, and Arnone as it is against Officer Mallick and Officer McLane, who initiated the Section 302 commitments.

The court will also not revisit the applications for Section 302 commitments filed by Mallick and McLane or any probable cause analysis. Given Scocozzo's repeated statements to kill himself relayed by the officers, Dr. Rahman and Dr. Boriosi had a legal and professional obligation to provide care to the plaintiff. Arnone had an obligation to complete the documentation required by the Section 302 process. Their actions do not give rise to false arrest or due process claims.

Finally, the R&R addresses service issues against these defendants. Defendants Arnone, Rahman and Boriosi were never served. The magistrate judge gave plaintiff notice early in this litigation that his claims against them may be dismissed due to lack of service. (Doc. 53). Plaintiff did not make service. This action has been pending for more than two years. Reading the objections filed by the plaintiff, he has not asserted any reason for his failure to serve these defendants other than his own incarceration out of state. But, the court need not dismiss without prejudice solely on this service defect. Upon review, the court agrees that Scocozzo's second amended complaint fails to state plausible, viable

34

claims against Dr. Rahman, Dr. Boriosi, and Arnone. They will be dismissed from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## 4. Commonwealth Defendants' Motion to Dismiss (Doc. 124)

Scocozzo also named three state defendants in his second amended complaint: 1) the Attorney General of Pennsylvania, now David W. Sunday, Jr.; 2) the Commissioner of the Pennsylvania State Police, now Lieutenant Colonel George L. Bivens; and 3) Lieutenant Bryan R. Paulshock of the State Police. Paulshock is included as a defendant in conjunction with the First Amendment retaliation and conspiracy claims raised against the Scranton police officers under Section 1983. Sunday and Bivens are named as defendants with respect to plaintiff's cause of action under 18 U.S.C. § 925A. Sunday and Bivens are also named as defendants with respect to plaintiff's constitutional challenge to Section 701 of the MHPA.

The court will begin with the Section 1983 claims against Paulshock. Those claims will be dismissed with prejudice for the same reasons the claims against Defendants McLane, Spinosi, and Mayo were dismissed above.

Turning to the claim against Sunday and Bivens under Section 925A, that statute provides:

> Any person denied a firearm pursuant to subsection
> (s) or (t) of section 922—

35

(1) due to the provision of erroneous information relating to the person by any State or political subdivision thereof, or by the national instant criminal background check system established under section 103 of the Brady Handgun Violence Prevention Act; or

(2) who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922,

may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be. In any action under this section, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs.

18 U.S.C. § 925A.

Scocozzo's second amended complaint takes matters one step further. He seeks a preliminary and permanent injunction enjoining the United States Attorney General and Pennsylvania Attorney General from prosecuting him for any attempt to purchase or possess a firearm. (Doc. 98, Sec. Am. Compl. at 19).

The court cannot issue such an injunction, given the criminal proceedings pending in Pennsylvania and in Florida. Practically speaking, Scocozzo has been charged with felony offenses in Florida, i.e., offenses punishable by more than one year in prison. See FLA. STAT. ANN. § 784.048(3) (aggravated stalking, rated as a third-degree felony in Florida); see also FLA. STAT. ANN. § 775.082(3)(e) (third-degree felonies are punishable by a term of imprisonment

36

not exceeding five years).  If convicted, Scocozzo would face other federal and state restrictions on firearm possession and ownership unrelated to any mental health commitments. See 18 U.S.C. § 922(g)(1); 18 PA. CONS. STAT. § 6105 (felony conviction prohibitions).

Separately, the court cannot enjoin Pennsylvania law from being applied to the plaintiff, particularly when he is presently being prosecuted by the Commonwealth  That request is barred by the abstention doctrine set forth in Younger v. Harris, 401 U.S. 37 (1971), and its progeny.  Younger abstention is an exception to the general rule that federal courts have a virtually unflagging obligation to hear and decide a case. See PDX N., Inc. v. Comm'r New Jersey Dep't of Lab. & Workforce Dev., 978 F.3d 871, 882 (3d Cir. 2020) (citing Sprint Commc'ns., Inc. v. Jacobs, 571 U.S. 69, 77 (2013) and Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)).  Younger applies when certain types of state proceedings are ongoing at the time a federal case is commenced, including underlying state criminal prosecutions. Sprint Commc'ns, Inc., 571 U.S. at 78.  The underlying charges against Scocozzo remain pending in the Lackawanna County Court of Common Pleas and have been pending since September 2020.  A proceeding is "ongoing" for Younger purposes so long as it was pending at the time the federal complaint was filed, even if "stayed" due

37

to criminal charges in another state. See PDX N., Inc., 978 F.3d at 885 (citation omitted).

Second, all three factors from Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982), are satisfied here. That is, there is an ongoing judicial proceeding, the state criminal case. There is also an important state interest: the Commonwealth's interest in enforcing its criminal laws and controlling its own criminal prosecutions. See Middlesex, 457 U.S. at 432. Furthermore, Scocozzo is free to raise his objections to probable cause, his First Amendment retaliation theories, and every other constitutional argument as defenses or motions within the state criminal proceeding itself. Nothing in state law or procedure forecloses those avenues, and plaintiff has not alleged otherwise. Accordingly, this court will abstain under Younger and dismiss Scocozzo's request for an injunction against the current state court prosecution.[8]

Plaintiff also seeks an order demanding that Bivens remove him from the PICS database. Neither the Commonwealth's motion to dismiss nor the R&R

---

[8] To the extent that Scocozzo seeks injunction of a future criminal prosecution, he has not satisfied the threshold requirement of alleging an actual case or controversy to make this issue justiciable. Scocozzo must show that he had sustained or was immediately in danger of sustaining some direct injury as result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (citations omitted). Plaintiff has not alleged facts demonstrating that any future prosecution is imminent rather than hypothetical. Consequently, he has no standing to obtain injunctive relief against state proceedings not yet commenced.

38

address this request for relief, which can be construed as a request "for an order directing that the erroneous information be corrected." 18 U.S.C. § 925A. In the court's discretion, that portion of Claim 1 will not be dismissed. Rather, it must be stayed pending disposition of the Florida charges. Scocozzo's action under 18 U.S.C. § 925A is dependent on whether he is convicted of the felony aggravated stalking charges in Florida. If he is convicted, he will be prohibited from receipt of a firearm pursuant to 18 U.S.C. § 922(g)(1). Thus, by the text of the statute, he will be unable to bring an action under Section 925A if he is subject to a felon firearm prohibition.[9]

Count 11 of Scocozzo's second amended complaint challenges Section 301 of the Mental Health Procedures Act, 50 PA. STAT. § 7301, naming Sunday and Bivens in their respective roles.[10] He challenges the words "as a result of mental illness" or "mental illness" as vague. His allegations take the form of

---

[9] Consequently, as the result of this analysis, Scocozzo's motions expedited for injunctive relief, (Docs, 151, 160, 164), will also be denied.

[10] Scocozzo's second amended complaint invokes Wilborn v. Barr, 401 F. Supp. 3d 501 (E.D. Pa. 2019). In Wilborn, which is an Eastern District of Pennsylvania decision, the court determined that Section 302 of the MHPA does not meet 18 U.S.C. § 922(g)(4)'s permanent restriction on an individual's ability to acquire, possess, or use a firearm. Id. at 511. Notwithstanding the fact that Wilborn is a district court decision, Scocozzo also overlooks the fact that Pennsylvania law separately prohibits those who have been involuntarily committed under Section 302 from possessing a firearm. 18 PA. CONS. STAT. § 6105(c)(4). Scocozzo has not raised a constitutional challenge to this statute. That challenge has already been made without success. Doe I v. Governor of Pennsylvania, 977 F.3d 270, 274 (3d Cir. 2020) ("once a person has been involuntarily committed under MHPA § 302, that person has joined the class of those historically without Second Amendment rights.").

39

argument. His arguments reference the Flying Spaghetti Monster, his observations of fellow detainees at the Baker County Detention Center, other life anecdotes, and YouTube mukbang creators. (Doc. 98 at 38–42).

The court liberally construes Scocozzo's insouciant allegations to trigger a void for vagueness challenge to the statute on its face. "Under federal constitutional law, '[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.'" Dailey v. City of Philadelphia, 417 F. Supp. 3d 597, 616 (E.D. Pa. 2019), aff'd, 819 F. App'x 71 (3d Cir. 2020) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)). The doctrine addresses two due process concerns: 1) that parties regulated by the statute should know what is required by them so they may act accordingly; and 2) that the statute carries enough precision and guidance so that those enforcing the law do not act in an arbitrary or discriminatory way. F.C.C. v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012) (citing Grayned, 408 U.S. at 108-09, 92 S.Ct. 2294). Further, to lodge a successful facial challenge to a legislative act, the challenger must establish that there is no set of circumstances under which the act would be valid. United States v. Salerno, 481 U.S. 739, 745 (1987).

Upon review of plaintiff's specific challenge to the language of Section 301, the phrase "as a result of mental illness" and the words "mental illness" need not

be specifically defined to implicate the mechanisms of the other MHPA sections, as plaintiff appears to assert is necessary. That is, as discussed earlier in this memorandum, the language triggering the statute's involuntary emergency examination and treatment provisions is not "mental illness," but a determination that the individual "poses a clear and present danger of harm to others or to himself[.]" That definition is outlined by clear terms. See 50 PA. STAT. § 7301(b). The points raised by plaintiff in his pleadings are better suited for other contexts, not for a constitutional challenge. Claim 11 will thus be dismissed.

Consequently, after reviewing the Commonwealth Defendants' motion to dismiss, the R&R, and plaintiff's objections to the R&R, and screening the second amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the court will reach a mixed decision. That is, the motion will be largely granted with the exception of plaintiff's claim under 18 U.S.C. § 925A against Sunday and Bivens in their official roles. That claim will be stayed pending disposition of the plaintiff's felony charges in the State of Florida.

### 5. Scocozzo's Motion for Partial Summary Judgment (Doc. 153)

The final R&R concerns the plaintiff's motion for partial summary judgment. (Doc. 159). The R&R recommends that the motion be dismissed without prejudice to renewal at the close of discovery. This recommendation is sound

41

considering the conclusions reached by the court above.  This R&R will be adopted.

## Conclusion

For the reasons set forth above, plaintiff's objections to the five R&Rs will be overruled with the exception of any objection related to his 18 U.S.C. § 925A claim against the Commonwealth through its Attorney General and its Commissioner of the Pennsylvania State Police.  The R&Rs will be adopted with that caveat.  The motions to dismiss will be granted with the exception of the Section 925A claim against the Commonwealth.  However, plaintiff's Section 925A claim against the Commonwealth will be stayed pending disposition of his Florida criminal charges.  Other than the claim for malicious prosecution against Defendants Spinosi and Mayo, the remaining claims will be dismissed with prejudice.  Plaintiff's motion for summary judgment will also be denied without prejudice.  An appropriate order follows.

Date: 7/13/26

JUDGE JULIA K. MUNLEY
United States District Court